## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>  **v.**<br><br>**SETH JASON**<br><br>  **Defendant.** | **Case No. 25-CR-191** |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

The United States respectfully submits this memorandum in support of its oral motion for detention pending trial under 18 U.S.C. § 3142(f)(1)(A) (Crime of Violence), as the Defendant, Seth Jason, is charged with violating 18 U.S.C. § 115(a)(1)(A) (Influencing a Federal Official by Threatening Family Member), 18 U.S.C. § 115(a)(1)(B) (Influencing a Federal Official by Threat), 18 U.S.C. § 875(c) (Interstate Communications with a Threat to Kidnap or Injure), and 47 U.S.C. § 223(a)(1)(C) (Anonymous Telecommunications Harassment). On eight separate occasions between October 2023 and January 2025, the Defendant used phones from his employer, Voice of America, to make threatening calls to the district offices of Representative Marjorie Taylor Greene. In those calls, he threatened that he and others were preparing to use firearms to kill Representative Majorie Taylor Greene, her family, her staff members, and her staff members' families. As a result, pursuant to 18 U.S.C. § 3142(g), the relevant factors support pretrial detention.

## BACKGROUND

On July 9, 2025, the Grand Jury returned an indictment charging the Defendant with one count of Influencing a Federal Official by Threatening Family Member, in violation of 18 U.S.C. § 115(a)(1)(A), one count of Influencing a Federal Official by Threat, in violation of18 U.S.C. § 115(a)(1)(B), one count of Interstate Communications with a Threat to Kidnap or Injure, in violation of 18 U.S.C. § 875(c), and Anonymous Telecommunications Harassment, in violation of 47 U.S.C. § 223(a)(1)(C). On July 17, 2025, an initial appearance was held before Honorable Magistrate Judge Matthew Sharbaugh. After the United States made a motion for pretrial detention, the Court set the detention hearing for July 18, 2025.

### *The Instant Offenses*

Voice of America was founded in 1942 to broadcast information in Europe during World War II. [1] Since then, it has grown to broadcast information in 49 languages across the world. *Id.* It is headquartered at 330 Independence Avenue SW, in the District of Columbia, where it houses ten broadcast TV studios, 32 video editing studios, 21 radio broadcast studios, 21 radio production and recording studios, and 26 audio mixing and dubbing stations. It employs a workforce of over 2,000 people. *Id.*

Seth Jason was employed at Voice America since 2001, where he most recently worked as a Studio Supervisor and Lighting Director. According to the Defendant, as a supervisor, his duties included renovating and refurbishing studios, scheduling studios for certain shows, doing payroll, and reviewing the performance of various employees and contractors. This position gave him access to the dozens of studios at the Voice of America headquarters in Washington, D.C.

---

[1]   https://docs.voanews.eu/en-us-inside/2024/10/11/5e5e2926-ae45-4547-a71e-943b0234cd04.pdf.   Last visited on July 18, 2025

The Defendant was placed on administrative leave on March 16, 2025, and ultimately retired on May 3, 2025. The Defendant is currently unemployed but is a reserve officer with the Anne Arundel County Police Department.

Beginning back on October 11, 2023, Seth Jason began using Voice of America ("VOA") resources to threaten Congressional Representative Majorie Taylor Greene. As alleged in the indictment, between October 11, 2023, and January 21, 2025, the Defendant made threatening calls to Representative Greene's two district offices, both located in the state of Georgia. The calls were made during work hours using telephones located in the control rooms for several different broadcasting studios. When these calls proceeded to voicemail, the Defendant would threaten to kill Representative Greene, her staff, and her staff's families.

Specifically, on October 11, 2023, congressional staff for Representative Greene's Dalton District Office received a threatening voicemail from phone number 202-920-4933. The caller's voicemail stated, "*My friends would like to go to a Greene rally because we have our AK-47s and we alls want to take them out on her because that's what we need. One between the th- th- the eyes.*" The incident was reported to the United States Capitol Police, who investigated the source of the call. When agents called the number, the call went to a voicemail greeting that stated, "Studio 48 CAP is not available at this time."

The second call was placed just two days later on October 13, 2023. On that day, congressional staff for Representative Greene's Dalton District Office received a threatening voicemail from phone number 202-240-4448. The caller stated, "*This is Kevin and my friends and I have followed her great advice about stocking up and stockpiling ammo. We have done that. And our next step is to come after Greene and her offices and her staff and exercise our Second Amendment rights and take them all out*." Phone records show that the call was placed at 12:03

PM and the subscriber information showed that the address for the phone number was 330 Independence Avenue SW, VOA's headquarters.

The third call was placed on November 20, 2023, to Representative Greene's Dalton District Office. There, staff members received a voicemail, this time from 202-920-4933. The caller stated, "*Hey, this is Kevin and we are looking forward to your book signing on December 2nd. Myself and my family are (unintelligible) well armed. And we're gonna take good care of you and your staff and make America better. Bam, bam.*" The call occurred at at 1:31 PM from phone number 202-920-4933, another phone number with an address at Voice of America's headquarters.

The fourth call was placed on January 26, 2024, again to Representative Greene's Dalton District Office. This call was placed from phone number 202-920-4918, and the caller stated, "*We are coming after you, your families, your staff families and we are locked and loaded. We are going to let you see what fear is like. We're going to take you all out.*" According to phone records, the call occurred at 2:59 PM. Subscriber information showed this phone number also had an address at Voice of America's headquarters.

The fifth call was placed on March 12, 2024, this time to Representative Greene's Rome District Office and from phone number 202-240-4336, The caller stated, "*Hi. My name is Ruben, and I just want to let the Greene people know me and my team, we are locked and loaded and were coming after you and your staff and your families with all of our weapons, we are going to express how mad we are at Greene and her team of racist Nazi followers, bam, bam. (unintelligible audio).*" Phone records show the call occurred at 1:30 PM.

The sixth call was placed on April 19, 2024, to Representative Greene's Dalton District Office. Staff members reported receiving a voicemail from phone number 202-240-4381 in which the caller stated "*We are coming after you, we are coming after your family, we are coming after*

*your staff, we are coming after your staff's family. We are locked and loaded and we are takin you out you Nazi, you're antisemitic Nazi, and you all are going to pay the price.*" Phone records show the call occurred at 1:06 PM. Like the previous calls, the subscriber information indicated that the address for this phone number was at Voice of America's headquarters.

The seventh call was placed on January 8, 2025, to Representative Greene's Dalton Office. from 202-240-4448, the same phone number used to make the call back on October 13, 2023. The caller left a voicemail that stated, "*Greene you will not see the inaugural, you'll be dead. Your family will be dead. Your staff will be dead. On the 20th, you'll all be dead. This will be the beginning of the revolt against you, you racist c\*\*t."* Phone records show the call occurred at 12:42 PM. As discussed previously, this phone line was located at VOA's headquarters in Washington, D.C.

The eighth and final call occurred on January 21, 2025, to Representative Greene's Dalton Office. A congressional staff member reported that the office received a voicemail from phone number 202-920-4458 in which the caller stated, "*You're as good as dead. You, your staff are as good as dead. Make your last will ready, because we are coming after you, and the only thing you're going to hear is bang, bang, bang, dead, dead. I can't wait. I'm yearning to hear you cry for your last breath. (Inaudible) to hear you cry for your last breath. We're going to kill you and your staff and staff's family.*" Phone records show the call occurred at 11:35 AM from a phone number located at the Voice of America headquarters.

Agents with the United States Capitol Police met with the Director of Security for Voice of America to locate the phones used to make the calls. According to that individual, the phones in the building are mostly located in the control rooms for broadcasting studios and can make outbound calls. A list was compiled for the studio location for each telephone line, and agents

physically located all but one phone line used to make the calls. The agents further obtained information regarding the usage of the studios where the phones were located, and determined that at the time of each call, the studios were either open or in "set up time" for the next show. The agents were informed when studios are open or in set up time, there would not be any teams present in the studios when the calls were made. As a result, the calls were likely made when the studios were empty.

The recordings were played for a senior employee at Voice of America, who identified the voice as belonging to the Defendant, and recommended four other employees who may recognize the voice. The recordings were played for three of those employees, two of whom identified the voice as belonging to the Defendant. One of the employees that they did not recognize the voice.

One of the employees who recognized the Defendant's voice noted that, regarding the March 12, 2024, call in which the caller identified himself as Ruben, there was another employee at Voice America with a similar name but whose voice did not match that of the caller. The employee noted that the Defendant talked about how that other employee with the similar name "annoyed" the Defendant.

On June 30, 2025, agents with the United States Capitol Police and Department of State Office of Inspector General interviewed the Defendant at his residence. Agents documented the interview in a memorandum drafted on July 1, 2025. Exhibit 1. Agents asked the Defendant if he had called Representative Greene from the Voice of America, to which the defendant replied in substance:

> "I called once, when she was saying some things about Jewish space lasers, and I
> called her office in D.C. and I said something along the lines of how dare you say
> "Jewish" space laser because I'm Jewish. And I… it was along the lines of how
> dare you say Jewish space lasers, I might have said something along the lines of,
> you know that's .. uhm.. antisemitic and why can't they be space lasers. I remember
> doing that, I might have actually done it twice when she.. something.., but I just,

and you know and again when it comes to political world, that's the thing that gets me is, lets face it there are certain words people are going to say that are going to make you bounce or if she said space lasers, I would have never done that! Jewish space lasers?"

Exhibit 1 at 2. Jason then stated, sua sponte, that none of his calls contained threats. Before that point, the agents had not characterized the calls as threatening, and the agents had not indicated that they were from the Threat Assessment Section.

The agents then played a recording of the call made on October 11, 2023. stated that the voice was his, but he did not recall leaving the voicemail. The Defendant reiterated that he did not remember leaving the voicemail on October 11, 2023, but acknowledged he may have been having a bad day. He described the stress at Voice of America over the past seven or eight years as insufferable. The Defendant stated, "You've got my voice, I just don't remember doing that," and added, "that's definitely my voice. I can't argue that, and I'm not going to deny that in front of you."

Agents also played a recording of the call made on January 21, 2025. The Defendant asked, "That was this year?" Then, he stated, "Honestly, I don't remember … but again, it sounds like me." The Defendant asked the agents not to play any more audio of the voicemails and reiterated he did not remember leaving the voicemail. The Defendant stated, "I regret doing anything like that at this point I just I know there is no way to take it back or apologize but I deeply … don't remember doing that … so what's next?" The Defendant stated, "I cannot deny that that is my voice and that I did that." The Defendant informed the agents that he does not take medications that affect his memory.

At the conclusion of the interview, the Defendant stated that he was just being stupid, and venting, and "just wanting maybe someone in the office to go, oh my god, you know look at these

wackos calling," and "I think just honestly those were just me being...just venting."

Agents asked how the Defendant placed the calls, and the Defendant informed the agents the calls may have been placed from Voice of America or from a personal phone, perhaps on the subway. For the call from Voice of America, the Defendant indicated that the call could have been placed from a control room or his office. The Defendant noted that the control rooms have phones set up to make outgoing overseas calls. He elaborated that he would simply walk around and use any control room.

Approximately two weeks later, on July 17, 2025, a search warrant was executed at the Defendant's home. Several electronic devices were recovered, along with OC spray that the Defendant possessed pursuant to his employment as a reserve police officer. No firearms were recovered. The Defendant provided the passwords for his electronic devices to law enforcement officers.

## LEGAL AUTHORITY AND ARGUMENT

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f).  Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer.  *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use."  *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-

trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, and *Williams*, 798 F. Supp. at 36.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a Defendant] as required and the safety of any other person and the community," the Court shall order a Defendant held pending trial. 18 U.S.C. § 3142(e). The Act provides however, for certain crimes, that there is a rebuttable presumption that no conditions or combination of conditions will assure the safety of the community. *See id.* "For the purposes of making that determination, a grand jury indictment, by itself, establishes probable cause to believe that a Defendant committed the crime with which he is charged." *United States v. Taylor*, 289 F. Supp. 3d 55, 62–63 (D.D.C. 2018) (internal quotations omitted).

The United States seeks detention pursuant to 18 U.S.C. § 3142(f)(1)(A) because the Defendant is charged with a crime of violence. A review and understanding of the facts and circumstances in the instant matter demonstrate that there are no conditions or combination of conditions that would assure the safety of the community. *See* 18 U.S.C. § 3142(e)(1). All four § 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the Defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g).

## I.   The Nature and Circumstances of this Offense Merits Detention.

The first factor to be considered, the nature and circumstances of the offense charged, weighs in favor of detention. The defendant's conduct was intended to cause and would cause any

normal human being an inordinate amount of emotional duress given that he was threatening to shoot the family members of Representative Greene and her staff, and additionally referenced that he was going to work with people to do this. The cumulative conduct of that would cause any reasonable person to fear losing their life and is reflected in the fact that this charge is considered a crime of violence carrying a significant penalty.

For violating 18 U.S.C. § 115(a)(1)(A) and 18 U.S.C. § 115(a)(1)(B), the Defendant faces a maximum sentence of up to ten years imprisonment pursuant to 18 U.S.C. § 115(b)(4). These offenses are crimes of violence which punish whoever "threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section." As relevant here, the elements clause of 18 U.S.C. § 3156 (which is incorporated into 18 U.S.C. § 3142) defines a crime of violence as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another." A threat to murder under 18 U.S.C. § 115(a)(1)(B) clearly threatens a "use of physical force against the person . . . of another" under the elements clause. Numerous courts have found that this offense satisfies the elements clause. Most notable is *United States v. Crawford*, No. 20-12309, 2022 WL 17069409 (11th Cir. Nov. 17, 2022), which noted:

> We turn next to Crawford's challenge to the second predicate crime. It was a 2009 federal conviction for threats to a federal official in violation of 18 U.S.C. § 115(a). According to paragraph 31 of the PSI, Crawford made several telephone calls in 2009 threatening to kill a federal probation officer, an agent of the FBI, and an assistant United States attorney. Again, there was no objection to these facts. These facts would seem to fall comfortably within the language of the elements clause of § 4B1.2(a)(1). See Bonner, 85 F.3d at 527. And Crawford cites no binding Eleventh Circuit or Supreme Court case suggesting otherwise. We readily conclude that there is certainly no plain error.

*Id.* at *5. Also, the Seventh Circuit observed:

> [Defendant's] felony convictions for threatening to murder a magistrate judge and
> threatening to harm a corrections supervisor are crimes of violence, see *United
> States v. Ladwig*, 432 F.3d 1001, 1005 (9th Cir.2005) (holding that a threat to harm
> another person is a crime of violence); see also U.S.S.G. § 4B1.2(a) (defining
> "crime of violence" to include any offense having as an element the "threatened
> use of physical force against the person of another."), which Romero did not dispute
> at sentencing. Thus, any argument that Romero is not a career offender would be
> frivolous.

*United States v. Romero*, 291 F. App'x 776, 777 (7th Cir. 2008). *see also United States v. Dean*, 111 F. App'x 762 (5th Cir. 2004) (citing elements clause of Guidelines); Judge Howell's decision in *United States v. Chrestman*, 525 F. Supp. 3d 14, 28 (D.D.C. 2021); *Cf. United States v. Aguirre*, 710 F. App'x 342 (10th Cir. 2018) ("In his reply brief, Mr. Aguirre agrees with the Government that this court need not review an argument that he raised in his opening brief—that his prior conviction for making a threat in violation of 18 U.S.C. § 115(a)(1)(A) is a crime of violence, explaining that he would have the opportunity to present that argument at resentencing on remand.").[2]

Looking to the particular circumstances of the offenses, the evidence shows that the Defendant's behavior was not a one-off lapse of judgment, but an intentional, long-term campaign to threaten and intimidate Representative Greene and her staff. The threats themselves were on two occasions specific in terms of timing. On November 11, 2023, the Defendant threatened to harm Representative Greene at a book signing on December 2, 2023, while on January 8, 2025, the Defendant warned that Greene "w[ould] not see the inaugural." Moreover, the Defendant tried

---

[2] See also *United States v. Clark*, 2023 WL 7134928 (N.D. Miss. 2023) at *4; *United States v. Kabbaj*, 2016 WL 11660082 (E.D. Pa. 2016) at *11; *United States v. Marseet*, 2025 WL 90647 (W.D.N.Y. 2025) at *3 (Defendant charged with threatening two United States judges in violation of 18 U.S.C. § 115(a)(1)(B) and 18 U.S.C. § 115(b)(4) as well as transmitting an interstate threat to murder the two judges and a court clerk in violation of 18 U.S.C. § 875(c). (Dkt. No. 22). Each charged offense is a "crime of violence" within the meaning of the Bail Reform Act. (citing cases))

to add to the menace of the threats by stating he was not alone, that he and his "friends," "family," and "team" were armed with firearms so that they could together make good on these threats. And it should be noted that some of these threats (October 11th, October 13th) were timed around Election Day or the Inauguration (January 8, January 21), both important events for our representative democracy.

Furthermore, the Defendant's method of calling from the Voice of America building seemed designed to mask the Defendant's identity by hiding in plain sight. While it could be argued that by using the Voice of America numbers, he allowed investigators to at least trace the phone numbers back to that location, but as discussed above, Voice of America is a large organization with thousands of employees and dozens of studios, and records show the Defendant made the calls when the studios were unoccupied. Based on these facts, the Defendant's actions seemed to be intended to allow him to hide amongst the crowd. Additionally, the Defendant used the name of one of his coworkers in one of his calls, possibly in an attempt to implicate this person and distance himself from his conduct. In summary, this factor weighs in favor of detention.

## II.    The Weight of the Evidence Against the Defendant is Strong.

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. Here, the Government is in possession of recordings as to each of the eight threatening calls placed to Representative Greene's district offices, as well as phone records showing the phone numbers and subscriber information for the calls which trace back to Voice of America. Furthermore, the voice in the calls was identified by multiple coworkers and the Defendant himself, though he denied remembering making the calls.

Moreover, the content of the statements themselves show that they were "true threats."

Objectively, a reasonable person must foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of an intention to inflict bodily injury or take the life of an individual. *Elonis v. United States*, 575 U.S. 723 (2015). Subjectively, the defendant must have consciously disregarded a substantial and unjustifiable risk that his or her communication would be viewed as a threat. *Counterman v. Colorado*, 143 S. Ct. 2106 (2023). In viewing whether a threat is a true threat, the entire factual context should be considered, which includes: the reaction of the recipient of the threat and of other listeners; whether the threat was conditional; whether the threat was communicated directly to its victim; whether the maker of the threat had made similar statements to the victim in the past; and whether the victim had reason to believe the maker of the threat had a propensity to engage in violence. *see United States v. Syring*, 522 F. Supp. 2d 125, 129 (D.D.C. 2007) (CKK).

Here, the Defendant made repeated and explicit threats of death directed at Representative Greene and her staff and their families.  While each voicemail on its own may not necessarily include an explicit threat, some were explicit, and all the threats must be interpreted together as part of a common scheme. The threats were intentionally conveyed directly to Representative Greene's offices, where they were more likely to be received by Representative Greene and her staff. And when the staff members received the voicemails, they reacted in a manner consistent with interpreting the calls as threats by reporting them to law enforcement. Furthermore, any reasonable listener would interpret the eight messages together as true threatening communications. Accordingly, a juror is likely to find that the the Defendant's statements were a true threat. As a result, this factor weighs in favor of detention.

### III.    The Defendant's History and Characteristics Merit Detention.

The third factor, the Defendant's history and characteristics weighs in favor of detention. While the defendant does not have any criminal history and did not flee after being interviewed by law enforcement on June 30, 2025, this is not the end of the analysis. The length and number of threatening calls placed to Representative Greene's office should be cause for prospective concern. Furthermore, during the interview with USCP agents, the Defendant admitted it was his voice in the calls but simultaneously and implausibly claimed to not remembering having made the calls, while stating that he may have made two calls to Representative Greene's office. And as to one of those calls that he did admit to making, he claimed to merely have been critiquing Representative Greene due to statements she made that implicated his religious background.

It is clear from the Defendant's actions that he deeply and violently disagrees with Representative Greene based on the views she holds. The Defendant admitted as such and stated he may have placed the calls based on frustration and negativity in the media. Exhibit 1 at 3. Recent events may only to serve to fuel the Defendant's anger at public servants with whom he disagrees. It bears noting that the defendant's administrative leave and retirement coincided with an executive order reducing funding for the parent company for Voice of America.[3] And in the past twenty-four hours, Congress has passed a bill that rescinded $1.1 billion for the Corporation for Public Broadcasting which supports NPR, PBS – organizations with a mission similar to that of Voice of America.[4] The Defendant has clearly shown he is willing to threaten a public servant based on

---

[3] *RFA and VOA Shutdown: The Erosion of U.S. Soft Power in Southeast Asia,* Quizon, Japhet, Center for International Studies (March 31, 2025)
https://www.csis.org/analysis/rfa-and-voa-shutdown-erosion-us-soft-power-southeast-asia#:~:text=On%20March%2015%2C%20President%20Donald,executive%20order%20are%20currently%20underway, last visited July 18, 2025.
[4] *Congress rolls back $9 billion in public media funding and foreign aid*, Neumann, Scott, Schapitl, Lexie, NPR, (July 18, 2025), https://www.npr.org/2025/07/18/nx-s1-5469912/npr-congress-rescission-funding-trump, last visited July 18, 2025.

statements made that he found offensive. It is not a stretch to believe that the loss of a long-held and well-paying job, plus cuts in the very programs that the Defendant worked on would not cause him further anger and frustration, which he may act out on prospectively. As such, this factor weighs in favor of detention.

### IV.    The Defendant Presents a Danger to Our Community.

The fourth and final factor danger to any person or the community posed by the Defendant's release, also weighs in favor of detention. The defendant did not just threaten a member of Congress, which is a direct attack on the functioning of our democratic institutions, he threatened her staff and her staff's families. And he did so not once, but eight times over the course of over one year. These actions cannot be said to have been the result of youthful indiscretion – the defendant is a 64-year-old man who until two months ago, was a gainfully employed supervisor in the federal workforce.

Moreover, the defendant promised to kill Representative Greene, her family, her staff members, and her staff members families with the help of others. On two occasions, he promised to do so with the help of "friends," (October 13, 2023, October 24, 2024). On another occasion, he threatened to come with his "family" to the December 2, 2023, book signing (November 20, 2023). And on a third occasion, he said his "team" was "locked and loaded." (March 12, 2024). In every call, he used the word, "we."

The fact that the Defendant has not made any threats in the past several months does not reduce the danger the Defendant poses. As the evidence shows, the Defendant sometimes went

---

https://www.npr.org/2025/07/18/nx-s1-5469912/npr-congress-rescission-funding-trump, last visited July 18, 2025

months between making calls to Representative Greene's offices, so a gap in conduct was not uncommon. Moreover, his previous means of making the calls – studios at Voice of America – seems to have been removed. But that does not prevent the defendant from acquiring a new phone – one that would be anonymous – and resuming his threatening and anonymous communications in the future.

Furthermore, while it could be argued that the Defendant did not take any affirmative steps towards making good on these threats, that line of reasoning misses the point of the Defendant's actions. It is the threats themselves, even if not executed, have a grave effect on the nation's democratic institutions. They can have a chilling effect on our representatives' ability to engage in the democratic process, dissuade highly capable members of the citizenry from participating in government as a whole, and diverts finite law enforcement resources. Therefore, this factor weighs in favor of detention.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Government respectfully requests that the Court detain the Defendant pending trial on these charges.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY


By:   _s/ Travis Wolf_____
TRAVIS WOLF
Assistant United States Attorney
NY Bar No: 5483243
United States Attorney's Office
601 D Street, NW
Washington, D.C. 20530
Telephone: 202-803-1670
Travis.Wolf@usdoj.gov

17